UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EDUARDO HERNANDEZ RENDON,

Petitioner,

v.

DARIN BALAAM, et al.,

Respondents.

Case No. 3:26-cv-00156-ART-CLB

ORDER ON ECF Nos. 2, 16, 17

Before the Court is Petitioner Eduardo Hernandez Rendon's motion for a temporary restraining order (ECF No. 2), motion seeking leave to file an untimely response to Respondents' declaration on Petitioner's removal (ECF No. 16), and motion requesting the facilitation of his return to the United States (ECF No. 17).

**I. BACKGROUND**

Petitioner first entered the United States on or about January 1, 1997. (ECF No 9-2). After a conviction for possession of drug paraphernalia, Petitioner agreed to voluntary removal to Mexico (ECF No. 9-4) and an immigration judge subsequently ordered his removal to Mexico on July 20, 2007 (ECF No. 9-5). Petitioner entered the United States for a second time on March 24, 2024. (ECF No. 9-6). The Department of Homeland Security's I-213 form reflects that Petitioner expressed a "fear of returning to Mexico because of the crime and violence in the area." *Id.* at 4. The I-213 form states that Petitioner was "served form M-444 regarding his credible fear and will be referred to an asylum officer." *Id.* No evidence has yet been submitted to the Court that suggests that Petitioner was ever granted a credible fear interview or referred to an asylum officer. Petitioner was released on his own recognizance on March 26, 2024, and ordered to report for a removal hearing on April 9, 2024. (ECF No. 9-8).

A removal hearing was ultimately held on April 11, 2024, at which Petitioner failed to appear. (ECF No. 9-9). Although Petitioner challenges that he never received notice of the removal hearing because he was homeless at the time (*see* ECF No. 1 at 4), the immigration judge found that Petitioner was provided with written notification of the hearing and a warning of the consequences of non-appearance (ECF No. 9-9 at 4). Petitioner was ordered removed to Mexico. (ECF No. 9-9 at 5). It does not appear that Petitioner appealed his removal order. Respondents represent that Petitioner was taken into the custody of Immigration and Customs Enforcement ("ICE") while housed at the Washoe County Detention Facility on or about February 5, 2026, after being transferred from another local jail. (*See* ECF No. 9 at 3).

Petitioner brought a petition for a writ of habeas corpus (ECF No. 1) and motion for a temporary restraining order ("TRO") (ECF No. 2) on March 5, 2026, claiming he was entitled to, and denied, a credible fear determination prior to removal. Petitioner alleged that despite having "repeatedly expressed fear to return to Mexico," ICE "failed to refer Petitioner to a USCIS asylum officer and has repeatedly stated that they will deport him without an interview." (ECF 1 at 4-5.) In his TRO motion, Petitioner explained that while he has expressed a credible "fear of persecution and torture if returned to Mexico," Respondents "have not provided the required screening and are attempting to remove Petitioner imminently." (ECF No. 2 at 1). Petitioner thus sought a stay of his removal until Respondents could first provide him with a credible fear determination. *Id.* The Petition and TRO motion claimed that without required these legal procedures, Petitioner's removal to Mexico would be unlawful, namely, it would violate federal law and due process.

The Court entered a screening and service order on Friday, March 6, 2026, at 4:38 p.m. (ECF No. 3). Recognizing the emergency at hand, the Court ordered Respondents to file their response by noon on Monday, March 9, 2026, with a

hearing to address the TRO that same afternoon. *Id.* The order directed the Clerk of the Court to add the United States Attorneys' Office for the District of Nevada to the docket as an interested party, which constituted service on all federal respondents pursuant to the Court's General Order 2026-03 (Feb. 13, 2026), Federal Rule of Civil Procedure 4, and 28 U.S.C. § 2243. *Id.* Electronic notice of the Court's screening order was sent to some eight recipients at the Department of Justice, including several attorneys at the United States Attorneys' Office for the District of Nevada. The Sheriff of the Washoe County Detention Center was served the Petition and TRO motion by mail and the Sheriff's counsel, Assistant District Attorney of Washoe County, was served electronically. *Id.*

The screening order instructed that Respondents "shall not transfer Petitioner out of this District, with the exception of effectuating Petitioner's lawful deportation." *Id.* at 2. Despite that order on Friday March 6, 2026, the Court later learned that Petitioner was removed to Mexico from Nogales, Arizona, the following day, on Saturday, March 7, 2026. (ECF No. 10-1.)

The following Monday, March 9, 2026, just hours before their responsive filings were due, Respondents moved to extend the time to file their response and for a continuance of the TRO hearing. (ECF No. 6). Respondents' motion did not mention Petitioner's whereabouts, so the Court was unaware in granting it that Petitioner had already been removed from the United States. The Court granted Respondents until March 11 to file their response and continued the TRO hearing until March 12, 2026. (ECF No. 7.)

Respondents disclosed in their response to the motion for a TRO on March 11 (ECF No. 9), that Petitioner was removed from the country on March 7, 2026, pursuant to a final removal order (ECF No. 10-1). At the hearing held on March 12, 2026, Assistant United States Attorney (AUSA) Tamer B. Botros stated that he "may have left the office early on Friday" and did not discover the Court's order until Saturday, March 7. The Court ordered Mr. Botros to file by March 16, 2026,

a sworn declaration "outlining his actions taken once he was in receipt of the Court's order entered on Friday, March 6, 2026." (ECF No. 11). Mr. Botros explained in his written declaration that he first reviewed the Court's order on March 7, 2026, and "promptly emailed" ICE to request case-related documents. (ECF No. 12). But it is unclear from the hearing and Mr. Botros' declaration at what time on March 7 he reviewed the Court's order and emailed ICE, and whether his email included or communicated the Court's order. It is also unclear when on that day Petitioner left the country. In his declaration, Mr. Botros stated that he did not request information about Petitioner's current location until March 9, 2026, and only learned of Petitioner's removal on March 11, 2026. *Id.*

Petitioner filed two motions on March 20, 2026, relating to Mr. Botros's declaration. He first sought leave to file an untimely response to the declaration, explaining that he missed the Court's deadline to file a response by two days. (ECF No. 16). Petitioner also filed a motion requesting the Court to "order the Government to facilitate Petitioner's return to the United States, and grant such further relief as necessary to restore the status quo ante and ensure compliance with this Court's authority." (ECF No. 17). Respondents opposed both motions (ECF Nos. 18, 19) and Petitioner filed a reply in support (ECF No. 20).

## II. DISCUSSION

### a. Leave to File Untimely Response (ECF No. 16)

The Court grants Petitioner's motion for leave to file an untimely response, noting that the filing was not untimely. While both Petitioner and Respondent maintain that Petitioner's response to Mr. Botros' declaration, filed on March 20, 2026, was two days late (*see* ECF No. 16 at 1; ECF No. 17 at 2), neither points to local rules or a court order that mandate a deadline for Petitioner's response to a court-ordered sworn declaration. The Court's order only addressed the deadline for Respondents to file their declaration. (*See* ECF No. 11). The Court acknowledges that Petitioner's response was timely and grants the motion to file

it. (ECF No. 16).

**b. Motion Facilitation of Return (ECF No. 17)**

For the following reasons, the Court grants Petitioner's motion seeking facilitation of his return to the United States (ECF No. 17).

Petitioner argues that he is entitled to return to litigate his habeas petition claiming that he is legally entitled to (and did not receive) a credible fear interview before removal. Respondents argue that Petitioner's removal was lawful and thus did not violate the Court's order prohibiting Petitioner's transfer from the district with the exception of "effectuating Petitioner's lawful deportation" (ECF No. 3 at 2). (*See* ECF No. 19 at 8) ("Petitioner has been removed from the United States pursuant to a lawful deportation order[.]"). Respondents neither address, nor dispute, Petitioner's allegation that he never received a credible fear interview despite his requests. Because Petitioner was entitled to litigate his habeas petition challenging the lawfulness of his removal, Respondents violated the Court's order and now must act to facilitate his return to the United States.

The Court has the authority to adjudicate Petitioner's habeas petition challenging his removal without a credible fear interview. While this Court would not have jurisdiction over Petitioner's direct challenge to a final removal order, *see* 8 U.S.C. § 1252(a)(5), Petitioner's claims are collateral to his removal order. Petitioner is not challenging his final removal order itself, but rather the inadequate process in which he was denied a credible fear interview prior to his deportation. *See Orellana Cruz v. Oddo*, 2026 WL 1650733 at *2 (W.D. Pa. June 8, 2026) (finding jurisdiction over habeas petition challenging removal while BIA appeal was pending, because the petition was "collateral to the IJ's discretionary grant of voluntary departure.").

When a habeas petition is brought before a district court in an immigration case, that court has the power to bar a detainee's transfer or removal from the district pending resolution of the petition. *E.g. Elias v. Knight*, 817 F.Supp.3d

970, 980 (D. Idaho 2025) ("District courts in immigration habeas actions thus retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings.") (citing *Oliveros v. Kaiser*, No. 25-CV07117-BLF, 2025 WL 2677125, at *8-9 (N.D. Cal. Sept. 18, 2025)). "Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo." *See E-C-R- v. Noem*, 2025 WL 2300543 at *n. 1 (D. Or. July 16, 2025) (collecting cases); *see also Vasquez v. Noem*, 2025 WL 3771402 at *1 (D. Utah Dec. 31, 2025) (ordering facilitation of petitioner's return to United States when removed while habeas petition was pending "to ensure these proceedings are returned to the status quo").

Courts have ordered the facilitation of petitioners' returns to the United States when government respondents deported individuals in violation of a court order. *See Lopez Belloza v. Hyde*, 820 F.Supp.3d 116, 119 (D. Mass. 2026) ("Respondents are ORDERED and DIRECTED to facilitate Any's return to the United States."); *Abrego Garcia v. Noem*, 2025 WL 1085601 at *1 (D. Md. Apr. 10, 2025) (directing that "Defendants take all available steps to facilitate" return after remand from Supreme Court); *Dcosta v. Warden of Immigr. Det. Fac.*, 820 F.Supp.3d 535, 540 (S.D. Tex. 2026) (violation of court order "alone is sufficient to render Petitioner's removal unlawful and persuade this Court" to order return); *Orelana Cruz* at *4-5 (W.D. Pa. June 8, 2026) (granting motion to facilitate return and finding action not moot, because previously ordered bond hearing can still be granted).

Petitioner appears to bring a valid claim for habeas relief because a non-citizen who expresses fear of removal to foreign country cannot be removed without first receiving a credible fear determination. By statute, "the Attorney General *may not remove* an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the

alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). By regulation, a noncitizen who expresses "fear of returning to the country designated" on the removal order shall be "immediately referred to an asylum officer for an interview" pursuant to 8 C.F.R. § 208.31. The same rule applies to a noncitizen facing a reinstated removal order, as Petitioner alleges here. (ECF No. 1 at 1); *see* 8 C.F.R. § 241.8(e) (requiring that noncitizen who expresses "fear of returning to the country designated" in a reinstated removal order, shall be "immediately referred to an asylum officer for an interview" pursuant to 8 C.F.R. § 208.31)).) The government violates due process by failing to advise a noncitizen of these rights or provide a credible fear determination prior to removal. *Acosta Diaz La Serna v. Mattos*, 2026 WL 2592919 at *4-5 (D. Nev. Sept. 2, 2026) (finding the government violated due process by failing to notify noncitizen of their right to apply for asylum or withholding of removal based on a credible fear of deportation to their home country or a third country); *see also L. v. United States Immigr. and Customs Enf't*, 403 F.Supp.3d 853, 865-66 (S.D. Cal. 2019) (finding "removal was unlawful" within the context of 8 U.S.C. § 1225(b)(1) when alien "made a credible fear claim, and was not provided with a credible fear interview.").

Petitioner alleges that he repeatedly expressed fear of return to Mexico to ICE officers, who acknowledged the claim in 2024. The I-213 form from March 2024 reflects that Petitioner "claims that he has fear of returning to Mexico because of the crime and violence in the area." (ECF No. 9-6 at 4). That form further states that Petitioner "has been served form M-444 regarding his credible fear and will be referred to an asylum officer." *Id.* Petitioner alleges that he was not referred to an asylum officer for a credible fear interview, despite multiple requests. (ECF No. 1 at 4). He further alleges that ICE "has repeatedly stated that they will deport him without an interview." *Id.* Respondents have provided no evidence supporting that Petitioner was granted the credible fear interview at any

time prior to removal. It follows that if Petitioner was removed from the United States without the requested interview, then his removal was unlawful.

Respondents contend that Petitioner was removed "pursuant to a lawful deportation order" and that his motion to facilitate his return is moot. (*See* ECF No. 19). As discussed, Petitioner does not challenge his removal order, but instead claims he was entitled to credible fear determination before removal, making his deportation unlawful. Respondents cannot unlawfully remove Petitioner from the country, in violation of this Court's order, and then claim the benefit of mootness as to the facilitation of his return. *See Orellana Cruz,* 2026 WL 1650733 at *4 ("The relevant fact is that Respondents transported Petitioner out of the United States while he was in custody and before Respondents had authority to do so… Petitioner's departure did not moot the case but rather is the very action for which he now seeks a remedy."). Regarding mootness, "[a] case becomes moot only when developments during litigation make it impossible for the Court to grant any effective relief. *See Orellana Cruz,* 2026 WL 1650733 at *4 (citation omitted); *see Campbell–Ewald Co. v. Gomez,* 577 U.S. 153, 159 (2016). That standard is not satisfied here because this Court could order relief by facilitating Petitioner's return and then adjudicating his petition. *See Reyes Vasquez v. Noem*, 828 F.Supp.3d 1272, 1280 (D. Utah 2026) (explaining after petitioner's return post-removal that his habeas claims were "live" and not moot.)

Respondents violated the Court's March 6 order prohibiting Petitioner's deportation "with the exception of effectuating lawful deportation." (ECF No. 3). The lawfulness of Petitioner's removal was the very issue raised by the Petition and TRO motion. The Court's order stated that Petitioner "establishes a *prima facie* case for relief" and set an expedited briefing and hearing to address the urgent matter. *Id.* Either the United States Attorney's Office did not timely convey the order they received on Friday, March 6, 2026, to ICE, or the order was ignored. Respondents, who were solely responsible for Petitioner's detention and

removal, wrongfully deprived Petitioner of the opportunity to present his challenge before the court.

The Court therefore grants Petitioner's motion for facilitation of his return (ECF No. 17). The Court thus issues the same relief ordered in like instances by courts across this country: Respondents must "facilitate" Petitioner's return to "ensure that his case is handled as it would have been had he not been improperly [removed]." *Abrego Garcia*, 145 S. Ct. at 1018; *see also Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1085601, at *1 (D. Md. Apr. 10, 2025) (directing the federal government on remand to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible"); *Lopez v. Blanche*, No. 2:26-cv-01298-CDS-EJY, 2026 WL 1875797, at 4 (D. Nev. June 29, 2026) (ordering the same relief); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2025 WL 3771402, at *1 (D. Utah Dec. 31, 2025) (same); *Dcosta v. Warden of Immigr. Det. Facility*, 820 F. Supp. 3d 535, 539 (S.D. Tex. 2026) (same).

To the extent this information is within their control, Respondents must provide such details as "(1) the current physical location and custodial status of [Petitioner]; (2) what steps, if any [they] have taken to facilitate [his] immediate return to the United States; and (3) what additional steps [they] will take, and when, to facilitate his return." *Abrego Garcia v. Noem*, 348 F.R.D. 589, 592 (D. Md. Apr. 15, 2025). Depending on Petitioner's current status, facilitation consistent with this order then obligates Respondents "at a minimum, to take the steps available to them toward aiding, assisting, or making easier [for Petitioner]…resuming his status quo ante," *id.*, and may include taking steps like "providing either transportation to a port of entry or financial support to reach a port of entry." *Vasquez*, 2025 WL 3771402, at *1. Facilitation is not limited to removing purely domestic obstacles to Petitioner's return. *See Abrego Garcia*, 348 F.R.D. at 592 & n.1 (citing caselaw discussing Department of Homeland Security publications and prior practices regarding facilitating the return of wrongfully

remove noncitizens).

## III. CONCLUSION

It is therefore ordered that Petitioner's motion for a temporary restraining order (ECF No. 2) is DENIED without prejudice.

It is therefore ordered that Petitioner's motion seeking leave to file an untimely response (ECF No. 16) is GRANTED.

It is therefore ordered that Petitioner's motion seeking facilitation of his return to the United States (ECF No. 17) is GRANTED.

It is therefore further ordered that the Court DEFERS ruling on Petitioner's pending habeas petition (ECF No. 1) and will set a briefing schedule upon his return.

It is further ORDERED that Respondents must take ALL AVAILABLE STEPS to facilitate Petitioner's return to the U.S. District of Nevada as soon as possible.

It is further ORDERED that Respondents must FILE A DECLARATION OR AFFIDAVIT setting forth (1) affirmative steps taken to facilitate Petitioner's return to the district, and (2) any setbacks during that process. This filing must be made by December 1, 2026. Respondents are ordered to meet and confer with Petitioner's counsel before December 1, 2026. Respondents must file a status report with further updates on the first day of each month thereafter until Petitioner is returned or the Court modifies this order.

DATED THIS 6th day of November 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE